IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| RANDY R. HARMS, | ) | 4:09CV3117 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT HOUSTON, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on Petitioner Randy R. Harms' ("Harms") Petition for Writ of Habeas Corpus ("Petition"). (Filing No. 1.) Respondent has filed an Answer (filing no. 6), a Brief in support (filing no. 9), and State Court Records (filing no. 5). Harms has filed a Response (filing no. 10), and a Brief in support (filing no. 11). This matter is therefore deemed fully submitted.

Condensed and summarized, Harms' claims are:

> Claim One:    Petitioner was denied an impartial jury in violation of the Sixth and Fourteenth Amendments *because* Petitioner was visible to the jury while in handcuffs, in violation of the trial court's order.

> Claim Two:    Petitioner was denied due process of law in violation of the Fourteenth Amendment *because* the trial court delivered preliminary instructions to potential jurors before all potential jurors were present.

> Claim Three:    Petitioner was denied due process of law in violation of the Fourteenth Amendment *because* the trial court

failed to examine the jury for possible misconduct after one of the jurors "improperly injected his medical expertise."

Claim Four:    Petitioner was denied due process of law in violation of the Fourteenth Amendment *because* the trial court overruled Petitioner's Motion to Dismiss at the end of the state's case, despite the evidence being insufficient as a matter of law.

Claim Five:    Petitioner was denied due process of law in violation of the Fourteenth Amendment *because* the trial court overruled Petitioner's Motion for a New Trial.

Claim Six:    Petitioner was denied due process of law in violation of the Fourteenth Amendment *because* the trial court imposed an excessive sentence.

(Filing No. 3 at CM/ECF pp. 1-2.)

## *BACKGROUND*

### I.    *Harms' Conviction and Direct Appeal*

On January 30, 2008, Harms was convicted by a jury in the District Court of Custer County, Nebraska, of one count of attempted murder and one count of use of a firearm to commit a felony. (Filing No. 5-9, Attach. 8 at CM/ECF pp. 24-26.) Harms was then sentenced to serve prison terms of thirty-five to forty years for the attempted murder conviction and ten to twenty years for the use of a firearm to commit a felony conviction. (*Id*. at CM/ECF pp. 29-30.)

2

Harms appealed his convictions to the Nebraska Court of Appeals, arguing that the Custer County court erred when it (1) failed to sustain his motion for mistrial after jurors viewed him in handcuffs, (2) failed to sustain his second motion for mistrial after voir dire examination commenced before a full jury was impaneled, (3) failed to sustain his motion to examine the jury regarding possible jury misconduct, (4) failed to sustain his motion to dismiss at the close of the state's evidence, (5) failed to sustain his motion for a new trial, and (6) imposed excessive sentences. (Filing No. 5-4, Attach. 3 at CM/ECF pp. 6-7.)

On March 24, 2009, the Nebraska Court of Appeals rejected Harms' alleged errors and affirmed his convictions and sentences. (Filing No. 5-2, Attach. 1.) Harms then filed a petition for further review, which the Nebraska Supreme Court denied on March 20, 2009. (Filing No. 5-3, Attach. 2 at CM/ECF p. 2.)

## II.    *Harms' Post-Conviction Proceedings*

Harms filed his Petition in this court on June 5, 2009. (Filing No. 1.) Thereafter, Respondent filed his Answer and Brief in Support. (Filing Nos. 6 and 9.) In his Brief, Respondent argues that Claims Two, Three, Four, Five and Six of Harms' Petition have been procedurally defaulted because Harms "did not fairly present the substance of each claim to the state appellate courts in his direct appeal and is now barred from doing so in a state post conviction motion." (Filing No. 9 at CM/ECF pp. 4-5.) In addition, Respondent argues that Claim One of Harms' Petition has no substantive merit. (*Id.*)

3

*ANALYSIS*

**I.      *Claims Two, Three, Four, Five and Six***

      **A.      Standards for Exhaustion/Procedural Default**

As set forth in 28 U.S.C. § 2254(b)(1):

(1)      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

      (A)      the applicant has exhausted the remedies available in the courts of the State; or

      (B)      (I)      there is an absence of available State corrective process; or

              (ii)      circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

4

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts *before* seeking federal habeas relief. *Id.* at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

In addition, "fair presentation" of a habeas claim in state court means that a petitioner "must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (quotation omitted). Thus, where a petitioner argued in the state courts only that "the trial court misapplied . . . state statutes and case law," the claim is procedurally defaulted. *Id.*; *see also Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009) (finding claim was procedurally barred where the petitioner failed to raise his federal due process claim and "cited no federal authority" in the state courts).

Moreover, where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n. 1.

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and "issues a plain statement that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007) (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation omitted). Even where a claim has been procedurally defaulted, a petitioner is entitled to an opportunity to demonstrate cause and prejudice to excuse the default. *Akins*, 410 F.3d at 456 n.1.

## B.     Analysis

Although Harms raised Claims Two, Three, Four, Five and Six in state court, he failed to present them in the context of a federal due process or equal protection claim. Indeed, in his direct appeal brief, Harms cites to only Nebraska case law and Nebraska statutes for Claims Two, Three, Four, Five and Six. (Filing No. 5-4, Attach. 3 at CM/ECF pp. 15-25.) In addition, the Nebraska cases that Harms does

cite to do not raise pertinent federal constitutional issues.[1]  (*Id.*)  As set forth above, in order to "fairly present" his habeas claims, Harms "must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts."  *Carney,* 487 F.3d at 1096 (quotation omitted); *see also Rucker,* 563 F.3d at 771 (finding claim was procedurally barred where the petitioner failed to raise his federal due process claim and "cited no federal authority" in the state courts).  Harms failed to do so.  Moreover, under Nebraska law, Harms is now barred from raising his federal claims in a state post-conviction motion because he was aware of them at the time he filed his direct appeal brief.  *State v. Jackson,* 747 N.W.2d 418, 429 (Neb. 2008) ("A party cannot raise an issue in a postconviction motion if he or she could have raised that same issue on direct appeal.").  Accordingly, Claims Two, Three, Four, Five and Six of Harms' Petition are procedurally defaulted.

## C.    Cause and Prejudice

To excuse a procedural default, a petitioner must demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or, in rare cases, that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  Although there is no precise definition of what constitutes cause and prejudice, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Strickler v. Greene,* 527 U.S. 263, 283 n.24

---

[1]The court notes that Harms did cite to *State v. Redmond,* 631 N.W.2d 501 (Neb. 2001), in his direct appeal brief.  (Filing No. 5-4, Attach. 3 at CM/ECF pp. 22 -23.)  This case raises a federal due process claim regarding the retroactive application of a Nebraska case.  However, this issue is not the issue that Harms addresses in his brief.  (*Id.*)

(1999); *see also Bell v. Attorney Gen. of the State of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007) ("A cause is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner."). Additionally, the Eighth Circuit has held that ineffective assistance of counsel at the state post conviction stage is not sufficient to constitute "cause" to excuse the procedural default of a habeas claim. *Armstrong*, 418 F.3d at 927.

The court has carefully reviewed Harms' submissions in this matter. Liberally construed, Harms seeks to invoke the fundamental-miscarriage-of-justice exception to excuse his procedural default. (Filing No. 11 at CM/ECF p. 6.) However, in order to invoke this exception, Harms must "present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." *Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006). *See Cassell v. Norris*, 103 F.3d 61, 62 (8th Cir.1996) ("For actual innocence to lift the procedural bar, [a petitioner] must show that it is more likely than not that, in light of new evidence, no reasonable juror would have convicted him."), *cert. denied*, 522 U.S. 857 (1997).

Harms' argument that he qualifies for the fundamental-miscarriage-of-justice exception is difficult to decipher. As best as the court can tell, he argues that the court should simply use its "equitable power" to look beyond the procedural bar. (*See* Filing No. 11 at CM/ECF p. 6.) However, Harms offers no new evidence to affirmatively demonstrate that he is innocent of the crimes for which he was convicted. *See Abdi*, 450 F.3d at 338. Thus, he cannot invoke the fundamental-miscarriage-of-justice exception to excuse his procedural default. In short, Harms' failure to follow the state's procedural rules is not adequate cause to excuse procedural default. Therefore, Claims Two, Three, Four, Five, and Six are dismissed.

8

## II.   *Claim One*

In contrast to Claims Two through Six, Harms raised the substance of Claim One in the context of a federal due process claim in his direct appeal. (*See* Filing No. 5-4, Attach. 3 at CM/ECF pp. 14-15.) In Claim One, Harms alleges he was "denied an impartial jury in violation of the Sixth and Fourteenth Amendments because [he] was visible to the jury while in handcuffs, in violation of the trial court's order."[2] (Filing No. 3 at CM/ECF pp. 1-2.) The Nebraska Court of Appeals adjudicated this claim on the merits and rejected it. (Filing No. 5-2, Attach. 1.) Because Claim One is not procedurally defaulted, the court will explore the state court findings.

### A.   Standard of Review

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

---

[2]Prior to his trial, Harms moved for and obtained a court order that directed the sheriff's office "to remove all hand, leg, and arm restraints from [him] at any time when [he was] present on floor of Custer County District Court for appearances at either jury selection hearings, trial, or at any other time when [he would be] in the presence of the jury." (Filing No. 5-8, Attach. 7 at CM/ECF pp. 24-25; Filing No. 5-9 Attach. 8 at CM/ECF pp. 4-6.)

Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 399. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006). This high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

**B.    Physical Restraints in Front of a Jury**

Because shackling a defendant during a trial is "inherently prejudicial," *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986), the Supreme Court has held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck v. Missouri*, 544 U.S. 622, 635 (2005). However, courts have held that a jury's brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom is not inherently or presumptively prejudicial. *Ghent v. Woodford*, 279 F.3d 1121, 1132 (9th Cir. 2002); *see also United States v. Olano*, 62 F.3d 1180, 1190 (9th Cir. 1995). In cases where the jury observes a defendant in physical restraints outside of the courtroom a

defendant must demonstrate actual prejudice to establish a constitutional violation. *Wilson v. McCarthy*, 770 F.2d 1482, 1485-86 (9th Cir. 1985) (concluding that a jury's brief, inadvertent observation of a defendant in shackles was not sufficient to justify reversal in the absence of an affirmative showing of actual prejudice).

### C.    State Court Findings

On the day of Harms' trial, Sheriff Ted Henderson ("Henderson") escorted Harms to the courtroom "in handcuffs, and then uncuffed [him] in front of" potential jury members who were in the hall outside of the courtroom.  (Filing No. 5-11, Attach. 10 at CM/ECF p. 7.)  Because potential jurors may have seen Harms in restraints, Harms' counsel immediately moved for a mistrial.  (*Id.*)  In support of his motion for mistrial, Harms' counsel called Henderson to testify.  The following exchange between Harms' counsel and Henderson then took place:

Q. [Y]ou were in charge of bringing [Petitioner] to [c]ourt today?

A. Yes.

Q. I assume that he was handcuffed, when he left the jail?

A. Yes.

Q. And transported?

A. Yes.

Q. You then brought him up handcuffed?

A. Yes.

Q. You encountered the members of the [j]ury panel, in the hall, is that right?

A. There were people in the hall.

Q. He was handcuffed coming up stairs, going through the hallway, not unhandcuffed until he was brought in the [c]ourtroom?

A. That is correct.

Q. You were in your uniform?

11

> A. Yes.
> Q. The standard uniform of the Custer County Sheriff's office?
> A. Yes.

(*Id*. at CM/ECF p. 8.)  The district court denied Harms' motion for mistrial, and informed Harms that he could renew the motion after voir dire if he desired.  (*Id*. at CM/ECF p. 10.)

During voir dire, Harms' counsel asked the jury panel if any of them had seen Harms in handcuffs that morning; seven responded in the affirmative.  (*Id*. at CM/ECF pp. 55.)  Harms' counsel then questioned the seven jurors about whether observing Harms in physical restraints would affect their final decision as to Harms' guilt or innocence.  (*Id*. at CM/ECF pp. 55-56.)  Not one of them indicated that it would.  (*Id*.)  Harms' counsel then passed the panel for cause and did not renew his motion for mistrial.  (*Id*. at CM/ECF p. 63.)

On direct appeal, Harms alleged that the district court erred in denying his motion for mistrial.  (Filing No. 5-4, Attach. 3 at CM/ECF pp. 14-15.)  However, the Nebraska Court of Appeals disagreed.  In its memorandum opinion, the court noted that Henderson's testimony established that there were "people in the hall," but did not show that the jury actually saw Harms in physical restraints.  (Filing No. 5-2, Attach. 1 at CM/ECF pp. 5-6.)  The court further noted that Harms failed to renew his motion after voir dire despite being informed by the trial court that he could.  (*Id*.)  Overall, the court concluded that Harms choose to waive his previous objections and could not reassert them merely because the trial produced an unfavorable result. (*Id*.)

## D.    Deference

As set forth above, the foregoing findings of fact and conclusions of law by the Nebraska Court of Appeals are entitled to substantial deference under the statutory

standard of review that applies to factual and legal conclusions reached by the state courts. This court has carefully reviewed the record in this matter and finds that the Nebraska Court of Appeals' decision to deny Harms' Claim One was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Harms did not submit any evidence, let alone clear and convincing evidence, that the Nebraska Court of Appeals was incorrect in any of its factual or legal determinations. 28 U.S.C. § 2254(e)(1).

In addition, the Nebraska Court of Appeals' determination was not contrary to clearly established federal law. The facts in this case are clearly distinguishable from the Supreme Court's holding in *Deck*. *Compare supra* ANALYSIS Part II.C. (defendant transported in handcuffs outside the courtroom) *with Deck,* 544 U.S. at 629 (defendant shackled with leg irons, handcuffs, and a belly chain during penalty phase of capital proceeding); *see also Earhart v. Konteh*, 589 F.3d 337, 348-49 (6th Cir. 2009) (concluding that *Deck's* holding is limited to visible restraint at trial).

Further, the Nebraska Court of Appeals' decision comports with federal precedent addressing the issue of jurors observing a defendant in restraints outside of the courtroom. *See Ghent*, 279 F.3d at 1132 (concluding that a jury's brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom did not violate a defendant's due process rights without a showing of actual prejudice); *Olano*, 62 F.3d at 1190 (same). Harms failed to submit any evidence of actual prejudice and did not establish that the jury was influenced by their observation of him in the hallway. Indeed, the seven jurors who observed Harms in restraints did not believe that the observation would affect their final decision as to Harms' guilt or innocence. (Filing No. 5-11, Attach. 10 at CM/ECF pp. 55-57.) In light of these findings, Harms' Petition is dismissed in its entirety.

13

IT IS THEREFORE ORDERED that:

1.    Petitioner Randy R. Harms' Petition for Writ of Habeas Corpus (filing no. 1) is denied in all respects and this action is dismissed with prejudice.

2.    A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 10th day of February, 2010.

BY THE COURT:

*Richard G. Kopf*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

14